UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| M.A. BERMAN, | ) | CASE NO. 4:12 CV 2888 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| ARLINGTON BANK, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff Mark A. Berman[1] filed this action under 42 U.S.C. §§ 1983 and 1985, the Home Ownership Equity Protection Act ("HOEPA") and the Truth in Lending Act ("TILA") 15 U.S.C. § 1640, the Racketeer Influenced Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961, and criminal statutes 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 1344 (bank fraud) against Arlington Bank, Arlington Bank Vice President Matt Hohl, Attorney Jack D'Aurora, Attorney John MacKinnon, the Behal Law Offices, LLC, Attorney John Sherrod, Attorney W.M. Jump, and the Jump Legal Group. In addition, plaintiff asserts numerous state law causes of action. He raises numerous objections to a foreclosure action in the Franklin County Court of Common Pleas. He seeks monetary damages, reversal of the foreclosure judgment, an order setting aside the sheriff's sale and voiding the deed of transfer, and a judgment quieting title to the property in his favor.

---

[1]    Mr. Berman captions this action as "State *ex rel* M.A. Berman."  The term *ex rel* is derived from the Latin *ex relatione* which means "by or on the relation of." A suit *ex rel*. is typically brought by the government upon the application of a private party (called a *relator*) who is interested in the matter. BLACK'S LAW DICTIONARY (9th ed. 2009). Mr. Berman, not the State of Ohio, is bringing this action based on his own interests. The use of the term "State *ex rel*" is inappropriate.

Plaintiff also filed a motion to proceed *in forma pauperis*. (ECF No. 2). That motion is granted.

On January 7, 2013, defendants Arlington Bank, Behal Law Offices LLC, Jack D'Aurora, Matt Hohl, and John J. MacKinnon filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3), combined with a motion for sanctions. (ECF No. 4.) Defendants contend the United States District Court for the Northern District of Ohio is not the proper venue to hear this case.

Thereafter, plaintiff filed motions seeking default judgment against all of the defendants. He states the defendants were served with notice and waiver forms and copies of the complaint, and failed to filed responsive pleadings.

Defendants W.M. Jump, and the Jump Legal Group filed a memorandum in opposition to the motion for default judgment on February 14, 2013. (ECF No. 26). John Sherrod filed a nearly identical memorandum in opposition on February 15, 2013. (ECF No. 28). They contend they have not yet been properly served with the complaint. They also claim venue is improper in the Northern District of Ohio.

For the reasons stated below, the motion to dismiss is granted, the motion for sanctions is denied without prejudice, the motions for default judgment are all denied, and this action is dismissed.

**Background**

Plaintiff alleges he purchased a condominium located at 2815 Avati Dr., Columbus, Ohio in September 2001. He obtained financing for the purchase through an adjustable rate mortgage in the amount of $44,500.00 through Arlington Bank in Columbus,

2

Ohio. He claims he could not attend the closing and therefore was required by Arlington Bank to create a corporate "straw man" titleholder for the purpose of signing the mortgage. He contends he created BEE, Inc., as the non-operating shell corporation to purchase the property. The mortgage and the note were signed twice by Larry Berman using a Power of Attorney for Mark Berman. The first signature indicates Larry Berman signed for Mark Berman individually and the second signature indicates he signed for Mark Berman as "president" of BEE, Inc. (ECF No. 4-3 at 5.) Plaintiff indicates Arlington Bank was aware the condominium was to be used as Plaintiff's personal residence. Nevertheless, Larry Berman also executed a "Non-Owner Occupancy Rider" for Mark Berman as an individual and as president of BEE, Inc., stating: "In modification of and notwithstanding the provision of Section 6 of the Security Instrument, Borrower represents that (s)he does not intend to occupy the property described in the Security Instrument as a principal residence."  (ECF No. 4-3 at 13.)

Plaintiff executed a Home Equity Line of Credit and Open Ended Mortgage with Arlington Bank in December 2001 in the amount of $15,000.00. This note, signed by Mark Berman on behalf of himself individually and as president of BEE, Inc., contains a warning that "[b]y signing this paper you give up your right to notice and court trial." (ECF No. 4-3 at 14.) It further advises Mr. Berman that "if you do not pay on time a court judgment may be taken against you without your prior knowledge and the powers of a court can be used to collect from you regardless of any claims you may have against the creditor whether for returned goods, faulty goods, failure on his part to comply with the agreement or any other cause." (ECF No. 4-3 at 14.)

It appears yet another adjustable rate mortgage was taken out by Mark Berman on behalf of himself and BEE, Inc. through Arlington Bank in March 2005 in the amount of $58,703.00. The note, signed by Mr. Berman as president of BEE, Inc., specifically states in a section titled "Statement Concerning Nature of Loan Transaction" that "[e]ach of the undersigned hereby warrants and represents to the holder hereof that the proceeds of this loan will be used by the undersigned for business or commercial purposes and will not be used for personal, family, education or household purposes." (ECF No. 4-3 at 26.) This note replaced the previous note and the Home Equity Line of Credit.

Plaintiff alleges he entered into negotiations with Arlington Bank to refinance the mortgage in January 2009. He claims that, as a condition of the refinancing, the bank demanded that the property be transferred out of the name of BEE, Inc. and solely into his name as an individual. He claims he complied with the request and transferred the property to Mark Berman, Trustee. He does not indicate the name of the trust or the beneficiary of the trust for whom the property was held. He states that "Matt Hohl, Arlington's senior officer, was notified of the transfer and the Bank had no objection." Plaintiff claims that when the proposed refinancing documents were sent to him, he noted that the payments and interest rates were higher than those previously represented to him. He contends the Bank offered to extend the term of the loan to lower the monthly payments, but he refused. It does not appear he signed these loan documents.

Arlington Bank, represented by Columbus Ohio attorney Jack D'Aurora of the Columbus, Ohio law firm, the Behal Law Group, LLC, filed a foreclosure action in the Franklin County Court of Common Pleas on May 22, 2009 against BEE, Inc., and Mark

Berman. The action, which was assigned to Franklin County Common Pleas Court Judge Beatty, was divided into two causes of action, one for breach of contract and the other for foreclosure. The Bank alleged BEE, Inc. and Mr. Berman failed to make payments on the note beginning in January 2009. The foreclosure complaint further indicated that the note executed by Mr. Berman was a cognovit promissory note and, pursuant to Ohio Rev. Code § 2323.13, any Ohio attorney could enter an appearance on behalf of the Bank and confess judgment against Berman and BEE, Inc. when default occurred. Columbus, Ohio Attorney Jack MacKinnon, also with the Behal Law Group, LLC, apparently acting as the confessor of judgment, filed an answer to the complaint on behalf of BEE, Inc. and Mark Berman admitting all of the allegations. That answer was filed along with the complaint on May 22, 2009. On June 24, 2009, plaintiff responded to the complaint with a *pro* se motion to dismiss pursuant to Ohio R. Civ. P. 12(b)(6), claiming Arlington Bank had not properly established that it was a real party in interest.

The common pleas court transferred the action to its commercial docket on July 10, 2009. This action not only changed the classification of the case, but also moved the case from Judge Beatty's docket, to the docket of Judge Frye. Berman objected to the transfer and asked Judge Beatty to reconsider her decision. On October 16, 2009, Judge Frye addressed both Berman's motion to dismiss and his motion to reverse the transfer to the commercial docket. Based on the "Non-Owner Occupancy Rider" submitted with the original mortgage, and the statement of business purpose attested to by Berman as president of BEE, Inc. in the March 25, 2005 mortgage, the court determined that the case was not an individual real estate foreclosure as Berman contended and was properly on the commercial docket.

Judge Frye denied the motion to reverse the transfer. He also denied the motion to dismiss, indicating that the mortgages all named Arlington Bank as the holder of the loan, thereby making it clearly a party in interest. Finally, the court found the cognovit judgment was proper, noting that the cognovit warning language was clearly underlined, bolded, capitalized in a larger font and boxed just above the signature blocks. Judge Frye granted judgment in favor of Arlington Bank on the first count of the complaint for breach of contract.

Arlington Bank then filed a motion for default judgment against BEE, Inc. and Berman on the second cause of action for foreclosure. Neither BEE, Inc. nor Berman responded to the motion and, on December 18, 2009, the court entered a default judgment against both of them.

Plaintiff appealed these judgments to the Ohio Tenth District Court of Appeals on January 15, 2010. He also filed a mandamus action against Judge Frye and Judge Beatty on March 8, 2010. The following day, he filed a motion to stay the execution of the judgment in the trial court and asked the court to vacate the default judgment. That motion was denied. He filed a motion in the Ohio court of appeals to stay the execution of the judgment. That motion was granted on the condition that plaintiff post a supersedeas bond. Plaintiff did not post a bond, but instead filed a document he created titled "Bonded Promissory Note" which claimed to be a "set off treasury" via "a pass-through account of Sylvester G. Foster." It purported to be backed by the United States Treasury, and relied on the Uniform Commercial Code, the Hague Convention and "Laws of Necessity," as support for its validity. The court of appeals did not deem the document to be an adequate supersedeas bond, as required to maintain the

stay, and the sheriff's sale of the property was conducted on March 12, 2010.  Arlington Bank was the successful bidder.

On the day of the sheriff's sale, plaintiff filed a chapter 7 bankruptcy petition on behalf of BEE, Inc. in the United States Bankruptcy Court for the Southern District of Ohio. He obtained an order from the common pleas court to stay the auction, but the order was not issued until after the property was sold. On March 12, 2010, he filed a motion in the court of appeals seeking to hold the bank in contempt and requested that sanctions be issued against the bank. The bankruptcy case was dismissed on April 2, 2010 for failure to correct the deficiencies in his petition. With the automatic stay of the bankruptcy lifted, the appeal of the foreclosure and the mandamus actions were returned to the active docket of the Ohio Tenth District Court of Appeals.

Five days later, plaintiff attempted to remove the appeal to the United States District Court for the Southern District of Ohio. The defendants filed a motion for remand. After plaintiff filed several more motions, including a motion for judgment on the pleadings, the case was remanded to the Ohio appellate court on July 27, 2010. Plaintiff filed a motion for reconsideration which was denied on August 11, 2010.

The appeal was reactivated upon remand. Plaintiff filed an objection to the reactivation, claimed the court of appeals had lost jurisdiction and moved to transfer the case. His objection was overruled on September 14, 2010. The court of appeals affirmed the foreclosure judgment on December 9, 2010. The common pleas court thereafter confirmed the sale of the property to Arlington Bank on December 20, 2010. The mandamus action was dismissed by the court of appeals on February 2, 2011.

On March 4, 2011, Arlington Bank filed a writ of possession to evict plaintiff from the property. In response, plaintiff filed a personal chapter 7 bankruptcy. *See In re Berman*, No. 2:11 bk 54694 (S.D. Ohio, filed April 29, 2011). In that petition, Berman listed only one asset, the condo located at 2815 Avati Drive, Columbus, Ohio. The petition was dismissed on May 18, 2011 because Berman failed to file required information. Arlington Bank filed a second writ of possession on May 25, 2011.

Plaintiff retained the services of the Jump Legal Group and, on June 21, 2011, filed an action to quiet title in the Franklin County Court of Common Pleas claiming that the mortgage through Arlington Bank was invalid and unenforceable. He also filed an emergency motion for stay of the eviction, and a motion to vacate the foreclosure judgment on June 22, 2011. The motion for stay of the eviction was denied on June 22, 2011. The motion to vacate the foreclosure was denied on June 29, 2011.

Plaintiff filed a second personal chapter 7 bankruptcy on June 23, 2011, the day after the motion to stay the eviction was denied. *See In re Berman*, No. 2:11 bk 54694 (S.D. Ohio, filed April 29, 2011). He also filed an adversarial proceeding in the bankruptcy court against Arlington Bank, the Valley Green Association, the Ohio Department of Taxation, the Franklin County Treasurer, Jack D'Aurora and John MacKinnon. *See Berman v. Arlington Bank*, No. 2:11-ap-2314 (S.D. Ohio, filed July 15, 2011). The bankruptcy was dismissed on July 18, 2011 because plaintiff did not file required information. The adversarial proceeding was dismissed for lack of jurisdiction on July 19, 2011. On July 22, 2011, the trial court lifted the bankruptcy stay in the eviction action and plaintiff was vacated from the property.

The action to quiet title was still pending in the Franklin County Court of Common Pleas when the bankruptcy stay was lifted. Plaintiff refused to appear for depositions on several occasions. His counsel withdrew from the case on August 12, 2011. The action was dismissed with prejudice on September 15, 2011.

Plaintiff has now filed the within action to challenge the foreclosure. His complaint contains twenty counts for relief. First, plaintiff seeks rescission of the loan, damages and attorney fees under the Home Ownership Equity Protection Act (HOEPA) and the Truth In Lending Act (TILA) 15 U.S.C. § 1640(a)(2)(A) and (B). He also asserts a claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01. In his second count for relief, plaintiff challenges the cognovit confession of judgment as invalid under Ohio law. His third count for relief contains a claim for the state tort of negligent misrepresentation. His fourth count contains a claim for breach of fiduciary duty against the foreclosing defendants and the attorneys with the Jump Legal Group. His fifth count contains an attorney malpractice claim against John MacKinnon and Jack D'Aurora. His sixth count contains a claim for breach of contract against the Jump Legal Group, John Sherrod and Mark Jump. Plaintiff's seventh count cites foreclosure fraud in violation of Ohio Rev. Code § 2323.13. His eighth and ninth counts contain claims for intentional and negligent infliction of emotional distress. Plaintiff's tenth and eleventh counts assert claims of criminal activity for mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1344. Counts twelve, thirteen and fourteen do not set forth legal claims but rather ask this Court to set aside the sheriff's sale, cancel the deed issued in the sheriff's sale and cancel the transfer of the sheriff's deed in the foreclosure action. Count fifteen of the complaint contains causes of action under

42 U.S.C. §§ 1983 and 1985. Count sixteen asserts a claim under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961. Count seventeen contains a claim for breach of the implied covenant of good faith and fair dealing in connection with the foreclosure proceedings. Count eighteen asserts a claim for unjust enrichment. Count nineteen asks this Court to quiet title to the real property located at 2815 Avati Drive, Columbus, Ohio. Count twenty also contains no legal claim but seeks relief in the form of a declaratory judgment vesting title to the Avati Drive property in plaintiff's name.

**Motions for Default Judgment**

Plaintiff filed motions for default judgment against the defendants. (ECF Nos. 6, 8, 10, 12, 14, 16, 18 and 20.) Fed. R. Civ. P. 12(a)(1) provides that, unless another time is specified by the rule or by federal statute, the time for filing an answer or responsive pleading is 21 days after service of the summons and complaint. Before serving an answer, a party may file a motion to dismiss asserting any of the grounds listed in Rule 12. The filing of such a motion alters the time period for filing an answer. Fed. R. Civ. P. 12(a)(4).

Defendants Jack D'Aurora, Arlington Bank, Matt Hohl, John MacKinnon, and the Behal Law Offices, LLC filed a motion to dismiss under Rule 12(b)(3). Rule 12(a)(4) provides that the time to file an answer to a complaint is postponed, generally, until fourteen days after the court decides a motion to dismiss filed under Rule 12. Because the Court has not yet addressed the motion to dismiss, there is no basis to conclude these defendants are in default of an answer.

W.M. Jump and the Jump Legal Group filed an opposition to the motion for default judgment on February 14, 2013. (ECF No. 26.) John Sherrod filed a substantially

similar opposition to the motion for default judgment on February 15, 2013. (ECF No. 28.) These three defendants contend plaintiff has not served them. They indicate plaintiff delivered a notice and request for waiver of service to them but did not include a proper summons. They do not indicate whether they were provided with a copy of the complaint. They claim that because plaintiff "has been granted leave to proceed *in forma pauperis*, waiver of service under FRCP 4(d) is not an option and service must be made by the U.S. Marshal." (ECF No. 26 at 2.)  They further claim that, because the Court has not recorded on the docket that it completed a judicial review of the complaint and approved it, the action cannot proceed and the motion for default is premature.  (ECF No. 26 at 1, No. 28 at 1.)

The defendants misread LR 4.1(a) as prohibiting an *in forma pauperis* plaintiff from serving the defendants by any means other than through the United States Marshal Service. *See* Fed. R. Civ. P. 4; 28 U.S.C. § 1915(c). While the Court is required to instruct the United States Marshal to conduct service for the plaintiff if he is permitted to waive the filing fee, this provision is in place to assist the plaintiff, not to limit his options for service or to penalize him if he perfects service on his own. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) (stating that the Marshal is directed to serve the complaint because a plaintiff proceeding *in forma pauperis* may not have the ability to perfect service). In other words, a plaintiff in an *in forma pauperis* action is not prohibited from accomplishing service of the complaint and summons by any other means acceptable under Rule 4. Conversely, there is no suggestion in LR 4.1, Fed. R. Civ. P. 4 or 28 U.S.C. § 1915(c), that a defendant who receives service by any other means specified in Rule 4 may claim insufficient service of process simply because he was not served by the United States Marshal.

11

These defendants also assert that the motion for default judgment is premature because the Court has not yet docketed its review of the complaint and approval for the action to proceed. (ECF No. 26 at 1, No. 28 at 1.) While the Court conducts a screening under LR 4.1, neither this local rule nor 28 U.S.C. § 1915(e) suggest that the review must be formally documented or that the case is stayed until the Court concludes its review and permits the action to go forward. Neither the local rule nor the statute requires the Court to publish the results of its review of the complaint. If defendants have been properly served with the complaint in accordance with Fed. R. Civ. P. 4, the time for them to file a responsive pleading is not tolled by the Court's internal review process.

Plaintiff, however, has not filed a proof of service suggesting any of the defendants were served. The Court has just granted plaintiff's request to proceed *in forma pauperis* and therefore has not yet directed the United States Marshal to serve the defendants. He has not provided sufficient information for the Court to determine whether he adequately served the defendants on his own. While plaintiff states in his motions for default judgment that he served the defendants, he does not indicate the date on which they were served or the method by which they were served. It is therefore impossible for the Court to determine whether the defendants are in default. Consequently, plaintiff's motions for default judgment are **denied**. (ECF Nos. 6, 8, 10, 12, 14, 16, 18 and 20.)

**Motion to Dismiss 12(b)(3) – Venue**

Jack D'Aurora, Arlington Bank, Matt Hohl, John MacKinnon, and the Behal Law Offices, LLC move for dismissal of the action on the ground that venue is improper in the Northern District of Ohio. A party may move to dismiss an action under Fed. R. Civ. P.

12

12(b)(3) when a case has been filed in an improper venue. If a defendant challenges venue pursuant to Rule 12(b)(3), the plaintiff bears the burden of proving that his chosen venue is proper. *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F.Supp.2d 1039, 1046 (S.D. Ohio 2002). In reviewing the motion, the Court may examine facts outside the complaint, but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff. *Gone to the Beach, LLC v. Choicepoint Servs., Inc.*, 434 F.Supp.2d 534, 536-37 (W.D. Tenn. 2006) (quoting *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F.Supp.2d 1014, 1017 (E.D. Mich. 2002)). If the Court finds that venue is improper, the case should be dismissed, unless the Court determines that it would be in the interest of justice to transfer the case to a district or division in which the action could have been brought. 28 U.S.C. § 1406(a).

The requirements for venue are set forth by statute. *Kerobo v. Sw. Clean Fuels Corp.*, 285 F. 3d 531, 538 (6th Cir. 2002). In a civil action where jurisdiction is not founded solely on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(b), which allows the action to be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

In this case, all three of the criteria establish venue in the Southern District of Ohio. Plaintiff lists Columbus, Ohio addresses for all of the defendants. The real property at issue is located in Columbus, Ohio. The loan transactions were notarized in Franklin County, Ohio. The foreclosure action was filed in the Franklin County Court of Common Pleas. In

fact, plaintiff also resides in the Southern District of Ohio. The case has no connection to this district and appears to have been brought here in the hope of simply achieving a new result in a forum unfamiliar with his case. Venue in the Northern District of Ohio is improper. Therefore, defendants' motion to dismiss under 12(b)(3) is **granted**. (ECF No. 4.)

**Failure to State a Claim – 28 U.S.C. § 1915(e)**

Because the Court finds that the case fails to state a claim upon which relief may be granted and it therefore would not be in the interest of justice to transfer this case to the Southern District of Ohio, this action is dismissed. Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers

14

legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the Plaintiff

        In this case, dismissal of the complaint in its entirety is appropriate. Of the twenty counts raised in this action, only five assert a federal cause of action. Two of those counts (ten and eleven) are based on violations of federal criminal law. Criminal statutes do not provide a private right of action to a civil plaintiff. *See Booth v. Henson*, No. 06-1738, 2008 WL 4093498, at *1 (6th Cir. Sept. 5, 2008); *United States v. Oguaju*, No. 02-2485, 2003 WL 21580657, *2 (6th Cir. July 9, 2003).

        The remaining three counts that cite federal causes of action seek to relitigate claims and issues which were already raised or which should have been raised in the state court foreclosure action. Plaintiff asks this Court to reverse the foreclosure judgment, order the sheriff's sale of the property vacated, void the deed of transfer, and grant him a judgment quieting title to the property in his favor. This federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. 28 U.S.C. § 1738; *Dubuc v. Green Oak Township*, 312 F.3d 736, 744 (6th Cir. 2002). In other words, if plaintiff is barred from bringing another action in state court to litigate these matters, he cannot file an action in federal court to by-pass that restriction. This Court must give full faith and credit to the state court judgment.

        When a federal court is faced with questions which may be precluded by a prior state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether the prior judgment should be given preclusive

effect in a federal action. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). An Ohio state court already issued an order granting the foreclosure, confirming the sheriff's sale, and granting a writ of possession. The Ohio Tenth District Court of Appeals considered these matters and affirmed the judgments of the Franklin County Court of Common Pleas. This Court must look to Ohio law regarding *res judicata* in considering whether any of the claims raised by plaintiff in this federal complaint are barred by these state court judgments.

Under Ohio law, the doctrine of *res judicata* dictates that "a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." *Johnson's Island, Inc. v. Bd. of Twp. Trustees*, 69 Ohio St.2d 241, 243 (1982). Application of the doctrine of *res judicata* does not depend on whether the original claim explored all possible theories of relief. *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000). Rather, "a valid, final judgment upon the merits of the case bars any subsequent action 'based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995).

The doctrine of *res judicata* in Ohio encompasses the two related concepts of claim preclusion and issue preclusion. *State ex rel. Davis v. Pub. Emp. Ret. Bd.*, 120 Ohio St.3d 386, 392 (2008). Under the doctrine of claim preclusion, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the

16

transaction or occurrence that was the subject matter of the previous action." *Grava*, 73 Ohio St.3d at 382. The doctrine of claim preclusion encompasses "all claims which were or might have been litigated in a first lawsuit." *Id*. Claim preclusion has four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action. *In re Fordu*, 201 F.3d 693, 703-04 (6th Cir. 1999) (construing Ohio law).

Similarly, issue preclusion, or collateral estoppel, "precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *MetroHealth Med. Ctr. v. Hoffman-LaRoche, Inc*., 80 Ohio St.3d 212, 217 (1997). Issue preclusion applies when a fact or issue "(1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction; and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994).

The Court notes that the doctrine of *res judicata* is an affirmative defense that generally must be raised by the defendants in a responsive pleading. Fed. R. Civ. P. 8(c)(1); Ohio R. Civ. P. 8 (C); *see Haskell v. Wash. Township*, 864 F.2d 1266, 1273 (6th Cir.1988). The United States Supreme Court as well as the Sixth Circuit of Appeals have indicated that a court may take the initiative to assert the *res judicata* defense *sua sponte* in "special circumstances." *Arizona v. California*, 530 U.S. 392, 412 (2000); *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 757 (6th Cir. 2003); *Holloway Constr. Co. v. United States*

17

*Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989) ("a district court may invoke the doctrine of *res judicata* in the interests of, inter alia, the promotion of judicial economy.")

This case fits precisely within those circumstances. Plaintiff has already thoroughly and repetitively litigated this matter in state and federal court. In addition to the many motions he filed in the course of the foreclosure action, he also filed a motion to stay the execution of the judgment, and a motion to vacate the judgment. He filed a direct appeal, and a mandamus action against the state court judges who presided over the foreclosure. When the appeal was not proceeding as he hoped, he attempted to remove the pending appeal to the United States District Court for the Southern District of Ohio. The defendants filed a motion for remand which was met by additional motions filed by the plaintiff, including a motion for judgment on the pleadings. He filed a motion for reconsideration of the remand, objected to the reactivation of the appeal in state court after remand, argued that the court of appeals had lost jurisdiction, and moved to transfer the case. Thereafter, plaintiff filed three bankruptcy actions for the sole purpose of obtaining an automatic stay of the collection proceedings, and an adversarial action in the bankruptcy court. Arlington Bank filed two writs of possession, one on March 4, 2011 and another on May 25, 2011, to evict plaintiff from the property after the sale was confirmed. In response, plaintiff filed an action to quiet title in the Franklin County Court of Common Pleas claiming that the mortgage through Arlington Bank was invalid and unenforceable. He also filed an emergency motion for stay of the eviction, and a motion to vacate the foreclosure judgment on June 22, 2011. Plaintiff has now filed the within action in this Court, where venue is clearly improper, seeking a new forum to continue litigation. Judicial economy requires dismissal of this action.

18

Applying the Ohio law on r*es judicata*, the Court concludes plaintiff is barred from relitigating the federal claims asserted in this action. For *res judicata* to apply, the parties to this action must be the same as the parties in the state court actions or in privity to the parties in that action. Plaintiff and Arlington Bank were parties to the foreclosure action.  Matt Hohl is the Vice President of Arlington Bank in charge of collections. Jack D'Aurora, John MacKinnon and the Behal Law Group, LLC represented Arlington Bank. John Sherrod, W.M. Jump and the Jump Legal Group represented plaintiff during post-judgment litigation in the foreclosure action. They are the same or in privity to the parties in the state court actions.

Of the five counts in the complaint that assert federal causes of action, only three of them assert claims under federal civil statutes. In count one, plaintiff seeks rescission of the loan pursuant to HOEPA and TILA. While this is the first time plaintiff has cited to HOEPA and TILA as support for relief, he claimed he was exercising his right to rescission in his state court quiet title action. (ECF No. 4-55.) The common pleas court dismissed the quiet title action on the merits with prejudice in favor of Arlington Bank as a sanction against plaintiff for refusing to appear for his deposition. (ECF No 4-62 at 3.) That judgment on the merits with prejudice operates as a bar to relitigation of that claim in federal court.

Moreover, plaintiff does not provide any explanation to support his claims under HOEPA and TILA. These statutes require creditors to provide borrowers with clear and accurate disclosures of terms such as finance charges, annual percentage rates of interest, and the borrower's rights, including notice of the borrower's right of rescission. *Fiorenza v. Fremont Inv. & Loan,* No. 08–CV–858, 2008 WL 2517139, at *2 (S.D.N.Y. June 20, 2008). Plaintiff states in a conclusory manner that these statutes apply, but he does not allege any

facts to suggest how they may be applicable or which loan terms, if any, were not disclosed to him. He fails to allege facts to indicate how any of the defendants violated these statutes. Even if this claim were not barred by *res judicata*, it would be dismissed for failure to state a claim.

In count fifteen, plaintiff asserts that the defendants violated his Fourth Amendment right by pursuing his eviction from the premises, his Fifth and Fourteenth Amendment rights to due process in the foreclosure proceedings, his Seventh Amendment rights to a jury trial and his Fourteenth Amendment right to equal protection during the foreclosure proceeding. Plaintiff attempted to assert claims under 42 U.S.C. § 1983 in his removal of his appeal to the United States District Court for the Southern District of Ohio. The appeal was remanded to the state court for lack of subject matter jurisdiction. In addition, plaintiff could have and should have asserted his claims of denial of due process in his appeal from the state court foreclosure judgment. These claims are also barred by *res judicata*.

Moreover, plaintiff's § 1983 claims are also subject to dismissal because they cannot be asserted against defendants who are not Ohio government officials or employees. S*ee Parratt v. Taylor*, 451 U.S. 527, 535 (1981). To establish a *prima facie* case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Id.* Generally, to be considered to have acted "under color of state law," the person must be a state or local government official or employee. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v.*

20

*Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). Plaintiff has not included any allegations in his complaint which suggest any of the defendants can be considered a "state actor." Merely being a participant in litigation does not make a private party a co-conspirator or joint actor with the state. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

Also in count fifteen, plaintiff asserts, again without explanation, that the defendants conspired in the course of the foreclosure action to defraud him for the purpose of accruing an economic gain for themselves in violation of 42 U.S.C. § 1985. Plaintiff has not asserted a claim under this statute in prior state court actions; however, he has included vague references to fraud in the foreclosure in numerous state court filing. This type of general allegation has been raised in state court proceedings but was never explained or expounded upon. It is therefore impossible to determine whether this claim was actually litigated in state court. A claim of conspiracy to commit fraud in the mortgage transaction could and should have been raised in the course of the foreclosure, the appeal, or the quiet title actions.

Moreover, in this federal action, plaintiff relies on conclusory statements of law devoid of facts to assert this claim. Conspiracy claims must be premised upon more than mere conclusions and opinions. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993) (holding that plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting

of the minds). This allegation, if there are facts to support it, could have and should have been raised in the state court matter.

Furthermore, 42 U.S.C. § 1985 provides a cause of action for an individual harmed by a conspiracy to deprive him or class of persons of equal protection of the laws. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 828-29 (1983)). For plaintiff to state a claim under § 1985, he must allege facts suggesting the defendants' conspiracy was the result of class-based discrimination (such as race, gender, or national origin) and was designed to deprive him of equal protection.  *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992)). There is no indication in the pleading of any type of class-based discrimination in the foreclosure proceeding.

The final federal claim plaintiff asserts is his RICO claim found in count sixteen. Plaintiff contends that the defendants engaged in a conspiracy from September 2001 (when he used BEE, Inc. as a "straw man" to purchase the condominium) to the present date, to participate in a pattern of racketeering. He claims they intentionally failed to disclose information, made misrepresentations, fabricated loan documents and executed foreclosure documents which constituted an "enterprise" as defined by the statute. Plaintiff does not explain what information he believes was not disclosed to him, what terms he feels were misrepresented, or even which documents he believes were fabricated. In the body of the complaint, he challenges the transfer of the case to the commercial docket, claims Arlington Bank lacked standing because it failed to provide documentary evidence that it was the real party in interest at the time of the filing of the foreclosure, challenges the confession of

judgment on the cognovit note which he claimed to be invalid under Ohio law, claims Jack D'Aurora "fabricated foreclosure documents," and claims his loan was not actually in default. The trial court already determined that the transfer of the case to the commercial docket was proper, that Arlington Bank was the real party in interest in the foreclosure based on the loan documents, that the cognovit provision was highly visible and therefore valid, and that plaintiff was in default of the mortgage. Plaintiff cannot assert these challenges for a second time by characterizing them as a RICO claim.

In addition, plaintiff asserted a RICO claim under 18 U.S.C. § 1964 in his quiet title action. That action was dismissed with prejudice, thereby precluding plaintiff from asserting that claim in this federal action.

Furthermore, plaintiff fails to state a claim under RICO. Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, Section 1962 states in relevant part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

A "pattern of racketeering activity" requires at least two acts of "racketeering activity" which are set forth in Section 1961(1).[2] 18 U.S.C. § 1961(5). An "unlawful debt" is a debt which was incurred in an illegal gambling activity through an illegal gambling business, or a debt unenforceable because of usury laws and which was obtained through a business enterprise that loans money at a usury interest rate that is at least twice the enforceable rate. 18 U.S.C. § 1961(6); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 229 (6th Cir. 1997). To prove a defendant violated § 1962(c), it is necessary for the plaintiff to prove either that the

---

[2] 18 U.S.C. § 1961(1) defines a "racketeering activity" as: (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: §201 (bribery),§24 (sports bribery), §§471, 472, and 473 (counterfeiting), §659 (theft from interstate shipment),§664 (embezzlement from pension and welfare funds), §891-894 (extortionate credit transactions), §1028 (fraud and in connection with identification documents), §1029 (fraud in connection with access devices), §1084 (transmission of gambling information), §1341 (mail fraud), §1343 (wire fraud), §1344 (financial institution fraud), §1425 (unlawful procurement of citizenship or nationalization), §1426 (reproduction of naturalization or citizenship papers), §1427 (sale of naturalization or citizenship papers),§1461-1465 (obscene matter), §1503 (obstruction of justice), §1510 (obstruction of criminal investigations), §1511 (obstruction of State or local law enforcement), §1512 (tampering with a witness, victim, or an informant), §1513 (retaliating against a witness, victim, or an informant), §1542 (false statement in application and use of passport), §1543 (forgery or false use of passport),§1544 (misuse of passport), §1546 (fraud and misuse of visas,), §§1581-1591 (slavery, and trafficking in persons), §1951 (interference with commerce, robbery, or extortion), §1952 (racketeering), §1953 (interstate transportation of wagering paraphernalia), §1954 (unlawful welfare fund payments), §1955 (illegal gambling businesses), §1956 (money laundering), §1957 (engaging in monetary transactions in property derived from specified unlawful activity), §1958 (use of interstate commerce in the commission of murder-for-hire), §§2251, 2251A, 2252, and 2260 (sexual exploitation of children), §§ 2312 and 2313 (interstate transportation of stolen motor vehicles), §§2314 and 2315 interstate transportation of stolen property), §2318 (trafficking in counterfeit labels for phonorecords, computer programs and motion pictures), §2319 (criminal infringement of a copyright), §2319A (unauthorized trafficking in sound recordings and music videos), §2320 (trafficking in goods or services bearing counterfeit marks), §2321 (trafficking in certain motor vehicles or motor vehicle parts), §§2341-2346 (trafficking in contraband cigarettes), §§2421-24 (slave traffic), (C) any act which is indictable under title 29, United States Code, §186 (restrictions on payments and loans to labor organizations) or §501(c) (embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under §157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in §102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, § 274 (bringing in and harboring certain aliens), § 277 (aiding or assisting certain aliens to enter the United States), or §278 (importation of alien for immoral purpose) if the act indictable under such of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in §2332b(g)(5)(B).

defendant committed two predicate offenses to establish a pattern of racketeering activity or that the defendant was engaged in the business of collecting illegal gambling debts or debts with interest rates twice the State or Federal usury rates. To violate Section 1962(d), a defendant must conspire with another person who commits two acts of racketeering activity. *United States v. Joseph,* 781 F.2d 549, 554 (6th Cir. 1986).

Plaintiff provides no allegations suggesting the defendants committed two or more predicate offenses, engaged in collecting illegal gambling debts, or attempted to collect a debt with an interest rate twice the usury rates. In counts ten and eleven of his complaint, he attempts to assert claims for bank fraud and mail fraud by reciting the wording of the statutes; however, he includes no factual allegations to indicate how these defendants committed the acts in question. Legal conclusions unsupported by facts are not sufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678.

Plaintiff's remaining claims all arise, if at all, under state law. Subject matter jurisdiction for these state law claims cannot be based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), which vests the federal district courts with jurisdiction in cases of sufficient value between citizens of different states. Plaintiff and all of the defendants are citizens of the state of Ohio. The Court can exercise supplemental jurisdiction over the state law claims if the Court is also entertaining federal law claims that derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Court, however, has discretion in hearing state law matters and, in cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.* at 726. The Court

therefore will not examine these claims to determine if they are barred by the doctrine of *res judicata*, because it declines jurisdiction to consider them in light of its dismissal of the federal law claims.

**Motion for Sanctions**

Finally, Arlington Bank, the Behal Law Offices, Jack D'Aurora, Matt Hohl, and John MacKinnon filed a Motion for Sanctions. In support of their motion, they cite LR 7.1(i) which permits the Court to impose sanctions on a litigant for filing a frivolous motion or opposing a motion on frivolous grounds. Plaintiff is a *pro se* litigant and his pleadings are therefore held to a less stringent standard than the Court would apply to pleadings filed by a lawyer. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (citing *Haines*, 404 U.S. at 520). This liberal standard does not exempt the plaintiff from meeting basic pleading and jurisdictional requirements which result in dismissal of his action; however, it does advise against sanctioning him for failing to comprehend the concepts of venue or *res judicata*.

Having said that, the Court recognizes that the plaintiff's litigation efforts are becoming vexatious. While, the Court is very tolerant of legal filings from *pro se* litigants, it will not permit any litigant to use the Court's resources to address filings which are clearly designed to harass the Court or opposing parties. Federal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs the ability to carry out Article III functions.  *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986). Indeed, this Court has the responsibility to prevent litigants from unnecessarily encroaching on judicial machinery needed by others. *Id*. To achieve these ends, the Sixth Circuit Court of Appeals has approved enjoining vexatious and harassing litigants by

requiring them to obtain leave of court before submitting additional filings. *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir. 1987); *Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480 (6th Cir. Mar. 15, 1995) (authorizing a court to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a) (citations omitted)). This action was improperly filed in the Northern District of Ohio for what appears to be the purpose of continuing to litigate a matter already decided in the state courts. It is being dismissed on that basis. Plaintiff is cautioned that continued efforts to file patently frivolous or repetitive documents or motions may result in sanctions being issued against him. The defendants' motion for sanctions is denied without prejudice.

**Conclusion**

For all the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

**IT IS SO ORDERED**.

Dated: February 22, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] 28 U.S.C. § 1915(a)(3) provides, in pertinent part:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.